# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| LARRY DAVID PACK, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION No. 6:08cv198 |
| § | |
| WOOD COUNTY, TEXAS, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wood County, Texas' Motion for Summary Judgment ("Motion") (Doc. No. 37). Plaintiff Larry David Pack has filed a Response to Defendant's Motion for Summary Judgment and Brief in Support Thereof ("Response") (Doc. No. 53), as well as a Surreply Brief in Opposition to the Defendant's Motion for Summary Judgment ("Surreply") (Doc. No. 59). Defendant has also filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Reply") (Doc. No. 56). The Court held a hearing on the Motion on May 21, 2009. Having considered the parties' arguments, the Court hereby **GRANTS** Defendant's Motion.

## BACKGROUND

Larry David Pack was a Justice of the Peace in 2000 for Wood County, Texas. Plaintiff allegedly received a telephone call on March 9, 2000 from an individual in the Hawkins School District claiming that Mr. Joe Gidney sexually abused a child. At the time, Mr. Gidney was a primary candidate for constable in Plaintiff's precinct. After receiving the telephone call, Plaintiff reported the allegations to Child Protective Services ("CPS"). Upon investigation, CPS found the

allegations unsubstantiated. Marcus Taylor, the Wood County District Attorney ("DA Taylor"), subpoenaed Plaintiff to testify before a grand jury investigating whether or not Plaintiff committed official oppression or official misconduct by reporting the allegations to CPS. RESPONSE at 1-2.

At the onset of Plaintiff's testimony before the grand jury, he alleges he was not read his rights pursuant to Article 20.17 of the Texas Code of Criminal Procedure. MOTION at 2; RESPONSE at 14. Plaintiff further alleges that DA Taylor failed to comply with Article 20.012 of the Texas Code of Criminal Procedure, which requires that proceedings before a grand jury be recorded either by stenographer or by use of an electronic device. RESPONSE at 11 (citing TEX CODE CRIM. PRO. ART. 20.012). Although DA Taylor had an electronic recording device available, he thought that once Plaintiff testified, the proceeding would dissolve. MOTION at 13.

Even though the grand jury did not indict Plaintiff for official oppression or official misconduct, Plaintiff alleges that DA Taylor requested that Texas Ranger Kenny Ray investigate Plaintiff for aggravated perjury in connection with Plaintiff's testimony before the grand jury. MOTION at 3. Subsequently, Plaintiff was charged with, and convicted of, aggravated perjury in the 402nd Judicial District of Wood County. *Id.* On appeal, the Texarkana Court of Appeals reversed Plaintiff's conviction. RESPONSE at 3. Plaintiff now brings suit against Wood County under 42 U.S.C. § 1983 for malicious prosecution. MOTION at 1.

Finally, Plaintiff alleges that his clerk, Dona Jordan, and another Wood County employee, Misty Nichols, remotely accessed his computer's hard drive in his JP office from Ms. Jordan's computer without his authorization. Plaintiff further alleges that they subsequently reported to Texas Ranger Kenneth Ray and Joyce Box that they discovered allegedly pornographic files on Plaintiff's work computer. MOTION at 7–8. When Plaintiff was made aware of these allegations, he invited

Assistant District Attorney Tom Burton into his office to review the files. RESPONSE at 6. Plaintiff alleges that he only had personal e-mails downloaded onto his work computer and that he never gave Ms. Jordan or Ms. Nichols permission to access them. RESPONSE at 6–7. Ms. Jordan gave a copy of these files to Texas Ranger Kenny Ray during the course of the aggravated perjury investigation. MOTION at 7–8. These files were not used during Plaintiff's aggravated perjury trial, except during the sentencing stage. RESPONSE, EXH. 5 at 3.

Plaintiff now brings suit against Wood County under 42 U.S.C. § 1983 for malicious prosecution and for a violation of his Fourth Amendment right to be free from an unreasonable search. MOTION at 1. Defendant asserts that summary judgment is appropriate here because Defendant Wood County cannot be held liable for the alleged prosecutorial misconduct or the alleged improper search of Plaintiff's computer. MOTION at 5–6.

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, as a whole, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). A "genuine issue" of material fact exists when a fact requires resolution by the trier of fact and a reasonable jury could resolve a factual matter in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the initial burden of showing absence of a material fact issue, and doubt is resolved against the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970);

3

*U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (the court should draw all reasonable inferences in favor of the non-moving party). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996).

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes*, 398 U.S. at 158-59; *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-51; *Texas Instruments*, 100 F.3d at 1179.

## **DISCUSSION**

As previously noted, Defendant asserts that summary judgment is appropriate here because Defendant Wood County cannot be held liable for the alleged prosecutorial misconduct or the alleged improper search of Plaintiff's computer. MOTION at 5–6.

## I. MALICIOUS PROSECUTION

### A. Viability of a Malicious Prosecution Claim under Section 1983

Defendant argues that because a district attorney represents the state of Texas while prosecuting criminal cases, Defendant Wood County cannot be held liable for the alleged wrongful conduct of DA Taylor. MOTION at 9–10. Defendant further argues that the DA, the Office of the DA, and witnesses who testified at Plaintiff's criminal trial have absolute immunity for the initiation of, prosecution of, and testimony during a criminal trial. *Id.* at 10–11.

Plaintiff responds that because DA Taylor was the final policy and decision maker with regard to how Wood County investigated and prosecuted criminal cases, his conduct constituted county policy—a valid basis for holding Wood County liable. RESPONSE at 10–11. Plaintiff argues that DA Taylor had an unconstitutional policy of violating state law during the course of grand jury proceedings. *Id.* at 11. Specifically, Plaintiff complains that DA Taylor 1) failed to apprise Plaintiff that he was the subject of the grand jury proceedings; 2) failed to record the grand jury proceedings; 3) failed to give Plaintiff the *Miranda*-type warnings required by Texas law; and 4) subjected Plaintiff to a grand jury interrogation despite the fact that the relevant statute of limitations had long passed, and Plaintiff argues that each of these violations is the basis of DA Taylor's unconstitutional policy sufficient to hold Wood County liable. For each of these alleged violations, Plaintiff points to state law as a basis for the asserted violations. *See* RESPONSE at 11–14 ("District Attorney Taylor acted with complete disregard for the policies and procedures established by the state law").

Plaintiff purports to bring this lawsuit under 42 U.S.C. section 1983 for the alleged malicious prosecution by DA Taylor. *See* RESPONSE at 9 (asserting that Wood County is liable for the malicious prosecution of Judge Pack and that the Fifth Circuit recognizes a causes of action for

5

malicious prosecution under section 1983); FIRST AMENDED COMPLAINT ("Am. Comp") at 1, 6–7 (asserting federal jurisdiction rests upon section 1983 based on malicious prosecution). Plaintiff cites five main cases in support of his claims: 1) *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992); 2) *Brummett v. Camble*, 946 F.2d 1178 (5th Cir. 1991); 3) *Turner v. Upton County, Texas*, 915 F.2d 133, 136–38 (5th Cir. 1990); 4) *Crane v. State of Texas*, 759 F.2d 412, 430 (5th Cir. 1985), *amended on reh'g*, 766 F.2d 412 (5th Cir. 1985), *cert. denied*, 474 U.S. 1020 (1985); and 5) *Jacobs v. Port Neches Police Department*, No. 1:94-cv-767, 1996 WL 363023 (E.D. Tex. June 26, 1996). However, there are a number of problems with Plaintiff's claims.

In *Castellano v. Fragozo*, the Fifth Circuit held that a freestanding claim for malicious prosecution is not a violation of the United States Constitution and to proceed under section 1983 a claim must rest on a denial of rights secured under federal not state law. 352 F.3d 939, 942 (5th Cir. 2003) (en banc); *see also Deville v. Marcantel*, – F.3d –, 2009 WL 1162586, slip op. at *9 (5th Cir. May 1, 2009) (recognizing that *Castellano* held that the Constitution does not include a right to be free from malicious prosecution and such a claim is not cognizable under section 1983). To the extent that Plaintiff is trying to do so, such a claim is not viable.

The cases Plaintiff cites in support of this asserted claim predate *Castellano*, when the Fifth Circuit still recognized a claim for malicious prosecution under section 1983. In *Castellano*, the Fifth Circuit pointed to *Sanders*—cited by Plaintiff—when noting that recent cases "fail to note the qualifying language of earlier decisions, which state that malicious prosecution claims implicate the *Fourth and Fourteenth Amendments* when the individual complains of an arrest, detention, and prosecution without probable cause." *Id.* at 948 n.32 (emphasis added); *see also id.* at 946 (discussing *Brummett v. Camble*, 946 F.2d 1178, 1183 (5th Cir. 1991)). Consistent with this

6

qualifying language in the prior cases, the Court went on to explain how the circumstances underlying a malicious prosecution claim—the initiation of criminal charges without probable cause—may result in the violation of enumerated Constitutional rights:

> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection-the Fourth Amendment if the accused is seized and arrested, for example . . . . Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

*Id.* at 953–54. Yet, this is not what Plaintiff alleges.

Plaintiff claims that Wood County DA Taylor maliciously brought grand jury and criminal charges against him without probable cause, and during the course of those proceedings violated Texas state law, constituting a policy sufficient to hold Wood County liable under section 1983. *See* SURREPLY at 4 ("D.A. Taylor must have been exercising his own local authority when he chose [to violate Texas state law, and therefore] . . . Wood County is liable for the malicious prosecution of Judge Pack"); *see generally Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (discussing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Plaintiff has not only explicitly framed this case as based on malicious prosecution, see Plaintiff's Proposed Jury Instructions and Verdict Form (Doc. No. 49) at 2 ("[t]he constitutional rights that the Plaintiff claims the Defendant violated [include] . . . [t]he right to be free from bad faith or malicious prosecutions"), but has also failed to plead any facts which support a proper claim under section 1983. *See e.g., Izen v. Catalina*, 398 F.3d 363, 366–367 (5th Cir. 2005) (affirming summary judgment on the plaintiff's malicious prosecution claim based on *Castellano* and because the

plaintiff failed to state a claim—based on the alleged facts underlying the malicious prosecution claim—directly under the Fourth Amendment). Thus, Plaintiff has failed to allege a proper claim based on his allegation of malicious prosecution.

**B.      County Liability Under Section 1983**

As previously noted, Plaintiff also argues that because DA Taylor was the final policy and decision maker with regard to how Wood County investigated and prosecuted criminal cases, his conduct constituted county policy—a valid basis for holding Wood County liable under section 1983. RESPONSE at 10–11. Plaintiff argues that DA Taylor had an unconstitutional policy of violating state law during the course of grand jury proceedings. *Id.* at 11.

Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Social Services*, 436 U.S. 658, 692 (1978). Municipalities may not be held liable under section 1983 based on a theory of *respondeat superior*. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bd. Of Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)). To prove liability under section 1983, the Fifth Circuit has held that three elements are required: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578. If a municipal officer has authority to establish final municipal policy and makes a decision or orders a course of action,

8

the municipality may be held liable for the officer's decision or order. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–482 (1986)).

Looking first at the unconstitutional policy of violating state law that Plaintiff asserts, there are two major problems with this argument. First, *Castellano* held that a claim under 1983 must be based on a federal right: "to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano*, 352 F.3d at 942. Plaintiff complains that DA Taylor 1) failed to apprise Plaintiff that he was the subject of the grand jury proceedings; 2) failed to record the grand jury proceedings; 3) failed to give Plaintiff the *Miranda*-type warnings required by Texas law; and 4) subjected Plaintiff to a grand jury interrogation despite the fact that the relevant statute of limitations had long passed. For each of these alleged violations, Plaintiff points to state law as a basis for the asserted violations. *See* RESPONSE at 11–14 ("District Attorney Taylor acted with complete disregard for the policies and procedures established by the state law"). Yet, as previously noted, such state law violations cannot be the basis for a claim under section 1983.[1]

While *Miranda* warnings are required in order to secure a defendant's privilege against self-incrimination, such warnings are a procedural safeguard rather than a right arising out of the Fifth Amendment. *See United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005). Plaintiff has not alleged a claim under section 1983 based on the Fifth Amendment, but even if he had, the courts have not interpreted *Miranda* to create a civil cause of action. *Hernandez v. Metropolitan Transit*

---

[1]Additionally, even if state law could be the basis for a claim under section 1983, Plaintiff has failed to put forth sufficient evidence to support his contention that DA Taylor had a policy of violating state law. Plaintiff has produced a single statement from DA Taylor that he sometimes doesn't record grand jury proceedings and no evidence regarding the alleged policy of failing to give the *Miranda*-type warnings.

9

*Authority*, 226 F.3d 643, 2000 WL 1029143, *1 (5th Cir. 2000) (citing *Warren v City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989)).

Similarly, the Constitution does not require that the government inform a grand jury witness that he is a potential defendant, nor does it require that grand jury proceedings be recorded. *United States v. Williams*, 874 F.2d 968, 975 (5th Cir. 1989) ("It is settled that a 'target' defendant is not constitutionally entitled to advice of his target status, or even of his Fifth Amendment rights, when called to testify before the grand jury."); *United States v. Scrimgeour*, 636 F.2d 1019, 1026 (5th Cir. 1981) ("There is no constitutional requirement that the Government inform a grand jury witness that he is a potential defendant."); *United States v. Harper*, 432 F.2d 100, 102 (5th Cir. 1970) ("There is no constitutional requirement that grand jury proceedings be transcribed.").

Second, even if Plaintiff had pled a proper basis for a claim under section 1983, there is no genuine issue of material fact regarding the alleged policies noted above. Defendant contends that Wood County cannot be held liable in this case because DA Taylor was acting in his prosecutorial capacity as an agent of the state, not of Wood County. REPLY at 2. Defendant cites to a number of state statutes in support of this argument. *See* Texas Code Cr. Pro. Art. 2.01 ("[e]ach district attorney shall represent the State in all criminal cases in the district courts of his district [and] . . . . [w]hen any criminal proceeding is had before an examining court in his district . . . he shall represent the State therein"); Texas Code Crim. Pro Art. 20.012 (referring to "the attorney representing the state"); Texas Code Crim. Pro Art. 20.03 ("'[t]he attorney representing the State' means the Attorney General, district attorney, criminal district attorney, or county attorney"). These sections of the Texas Code of Criminal Procedure support Defendant's contention.

Moreover, the Fifth Circuit has repeatedly held that county district attorneys in Texas represent the State of Texas when prosecuting criminal cases. *Mowbray v. Cameron County, Texas*, 274 F.3d 269, 276 (5th Cir. 2001) ("Under § 1983, prosecutors are entitled to absolute immunity for acts performed as advocates of the state."); *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) ("the Harris County District Attorney [was] acting not as a county officer[] but as [an] advocate[] for the state, prosecution violations of Texas criminal law . . . . The [alleged violations] are not fairly attributable to Harris County because they are actions taken by agents of the state as part of the prosecutorial function"); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995) (noting that the district attorney was absolutely immune for actions taken pursuant to role as State advocate in preparing for the initiation of judicial proceedings); *see also Spike v. Phelps*, 131 Fed. Appx. 47, 49 (5th Cir. 2005) (noting that Texas law provides that prosecutors are state actors protected by Eleventh Amendment immunity). Thus, because DA Taylor was acting as a representative of the state, Wood County cannot be held liable for the actions of DA Taylor in prosecuting Plaintiff.

Furthermore, as a representative of the state, DA Taylor is entitled to absolute immunity, which extends beyond the prosecution to include grand jury proceedings. *Burns v. Reed*, 500 U.S. 478, 490 (1991) (noting that the Court had affirmed a decision from the Second Circuit in which the court granted immunity for prosecutor's conduct before a grand jury and noting the "widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries"); *Mowbray*, 274 F.3d at 276 (noting that prosecutors are entitled to absolute immunity as advocates of the state and the immunity extends to actions "preliminary to the initiation of a prosecution and . . . apart from the courtroom"); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) ("Prosecutorial immunity applies to the prosecutor's

actions in initiating the prosecution and in carrying the case through the judicial process."); *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980) (noting that prosecutorial immunity extends to "prosecutor's actions in initiating, investigating and pursuing a criminal prosecution" and thus a prosecutor would be "negligent in his duties as a prosecutor had he not interviewed witnesses before presenting their testimony to the Grand Jury"); *see also Quinn v. Roach*, 2009 WL 1181072, *9 (5th Cir. 2009) (holding that the district attorney enjoyed prosecutorial immunity for the decision to seek indictment); *Reynolds v. Strayhorn*, 2006 WL 3341030, *10 (W.D. Tex. 2006) ("it is beyond dispute that the challenged actions taken by [the district attorney] are protected by prosecutorial immunity, as they all related to the initiation of the prosecution through the presentation to the grand jury"). For all the foregoing reasons, summary judgment is appropriate on Plaintiff's malicious prosecution claim.

## II. Computer Search

Defendant argues that Plaintiff had no reasonable expectation of privacy in his computer because it was paid for, owned, and provided by Defendant Wood County for Plaintiff's official duties as a Justice of the Peace. MOTION at 11–12. Defendant further argues that the policies and procedures on file in Wood County reinforce that Plaintiff's files stored on his computer were the property of Wood County and were not private, and therefore, he had no basis for any expectation of privacy therein. *Id.* at 12–13.

Plaintiff argues that he did have a reasonable expectation of privacy in his private e-mails stored on the computer in his office, and therefore, the search conduct by Ms. Jordan and Ms. Nichols violated his Fourth Amendment right to be free from an unreasonable search. RESPONSE at 15. Plaintiff further argues that the Wood County policy regarding private use of

county computers was enacted three months after the search occurred, and as a result, it has no effect on the instant case. *Id.* Plaintiff alleges that his clerk, Ms. Jordan, along with the chief clerk for Precinct 2, Ms. Nichols, copied files, including personal email from this computer and gave them to law enforcement. MOTION, EXH. A at 15:13–25, 16–8, 17:3–5, 20:7–20. In his affidavit, Plaintiff contends that he had no idea that his private e-mails could or would be opened or seen by others. RESPONSE, EXH. 2 at 4. Plaintiff further indicates that to the best of his knowledge, files used by the clerks in the Justice of the Peace Court were located on the hard drive of the computer in Ms. Jordan's office, and as a result, Plaintiff is unaware of any reason Ms. Jordan would need to access files on Plaintiff's hard drive. *Id.* at 5. Plaintiff also claims that neither Ms. Jordan, nor Ms. Nichols, were authorized to access files on the hard drive of his computer. *Id.*

A Fourth Amendment analysis requires a determination of whether Plaintiff had a constitutionally protected reasonable expectation of privacy. *United States v. Ward*, 561 F.3d 414, 417 (5th Cir. 2009). Plaintiff had a reasonable expectation of privacy if he can show an actual, subjective expectation of privacy with regard to his work computers and if he can show an objectively reasonable expectation of privacy as well. *Id.* Employees' expectations of privacy in the workplace are reviewed on a case-by-case basis. *O'Conner v. Ortega*, 480 U.S. 709, 718 (1987). While private employees may have a reasonable expectation of privacy, *id.* at 716, public employees' expectation of privacy may be reduced by office practices, procedures, or legitimate regulation. *Id.* at 717. Further, a public employee's privacy interest in his or her place of work is far less than that in their home or other personal places. *Ortega*, 480 U.S. at 725.

Defendant has made a prima facie showing that Plaintiff did not have a reasonable expectation of privacy in his work computer. Defendant points to the facts that the computer was in his Justice of the Peace office; was owned by Wood County; was paid for by Wood County; was provided to Plaintiff in connection with his duties as Justice of the Peace.[2] MOTION at 11–13. Defendant further contends that Plaintiff's Fourth Amendment claim is barred by the statute of limitations. REPLY at 4–5.

Plaintiff has not adequately rebutted Defendant's prima facie showing that he did not have a reasonable expectation of privacy in his work computer. Other than conclusory statements and speculative accusations, Plaintiff has put forth no meaningful evidence that he had a subjective expectation of privacy in his county-owned computer. *See, e.g.*, RESPONSE, EXH. 5 at 4–5. Plaintiff has not indicated that he had a password protecting his computer. *See, e.g.*, MOTION, EXH. 9 at 2; *United States v. Slanina*, 283 F.3d 670, 675 (5th Cir. 2002), *vacated on other grounds by* 537 U.S. 802 (2002), *on appeal after remand* 359 F.3d 356 (5th Cir.2004) (per curiam) ("[t]o limit access to his computer files, he installed passwords"). Plaintiff has also not indicated that he locked the door to his office in order to keep others from accessing it. *Slanina*, 283 F.3d at 676 ("Slanina clearly demonstrated a subjective expectation of privacy with respect to his . . . office computer equipment [because] [h]e had closed and locked the door to his office").[3]

---

[2]Defendant also points to the Wood County Personal Conduct Policy, Chapter VI, Section 1, which outlines the County's policies regarding County-owned property. MOTION at 12. However, the relevant timeline with regard to when the search occurred and when these policies were filed is in dispute. Even taking Plaintiff's version of the timeline as true, Plaintiff still did not have a reasonable expectation of privacy, as explained above.

[3]While a plaintiff is not required to show the use of a password or a practice of locking his office door, the Court merely notes these as examples of evidence that might show a subjective expectation of privacy, in contrast with the lack of evidence Plaintiff has put forth.

Regardless of whether Plaintiff had a subjective expectation of privacy, Plaintiff has failed to raise a genuine issue of material fact as to an objectively reasonable expectation of privacy in his office computer. It is undisputed that Plaintiff's computer was located in his office and was owned by Wood County. RESPONSE, EXH. 7 at 4:18–22; MOTION, EXH. A at 16:9–13; *see United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) ([a]lthough ownership of the item[s] seized is not determinative, it is an important consideration in determining the existence and extent of a defendant's Fourth Amendment interests") (internal quotations omitted). Plaintiff's computer was furnished by Wood County for his work as a Justice of the Peace and was connected to a network of computers in which Ms. Jordan's computer was the server.[4] RESPONSE, EXH. 7 at 4:3–7, 6:4–12; *see also* RESPONSE, EXH. 9 at 2 ("[t]he fact that the link was not a default setting indicates it was not a normal part of *the peer to peer programming used to permit communication between computers located in the court*") (emphasis added); *Angevine*, 281 F.3d at 1135 ("given his transmission of the pornographic data through a monitored University network, deleting the files alone was not sufficient to establish a reasonable expectation of privacy"). Additionally, Ms. Jordan remotely accessed the files from her computer—she did not use Plaintiff's computer to access the files.[5] RESPONSE at 6

---

[4] In support of his Response, Plaintiff attached the trial transcript of Dona Jordan's testimony, which indicates that the files at issue were located on a drive called "JP on server." RESPONSE, EXH. 9 at 6:18–24. Yet, Plaintiff contends that a link had intentionally been established on the computer located in the clerk's office in order for the user of that computer to gain access to the hard drive of the computer located in Plaintiff's office. RESPONSE, EXH. 9 at 2–3. This assertion, however, is irrelevant to whether Plaintiff had a reasonable expectation of privacy—subjective or objective. While a networked drive is relevant to whether Plaintiff had an objectively reasonable expectation—because others on the network could potentially access the networked drive—a link that was intentionally created without Plaintiff's permission and without him knowing it would not affect his expectation of privacy as he was unaware it was created until after the search had occurred.

[5] While the Court notes that Ms. Jordan "remotely" accessed the files, this is intended solely as an indication that Ms. Jordan did not access the files from Plaintiff's computer. The Court is not using the term "remote" to indicate that the files were located on another network. It is unclear from the record where the files at issue were located.

15

("Dona Jordan reported her 'discovery' of allegedly offensive files *on her computer* in May of 2003"); *id.*, Exh. 7 at 30 (indicating that Ms. Jordan saw the pictures on her monitor).

The computer was also paid for by Wood County and was provided to Plaintiff in connection with his duties as Justice of the Peace. *Id.* at 16:14–20; *Angevine*, 281 F.3d at 1135 (stating that "[b]ecause the computer was issued to Professor Angevine only for work related purposes, his relationship to the [public] University computer was incident to his employment" and "[r]easonable people in Professor Angevine's employment context would expect University computer policies to constrain their expectations of privacy in the use of University-owned computers); *see also United States v. Zimmerman*, 303 Fed. Appx. 207, 209 (5th Cir. 2008) ("we conclude Zimmerman did not have an objectively reasonable expectation of privacy in his City-owned workplace computer"). Plaintiff does not argue that he owned the data stored within. *See, e.g., Angevine*, 281 F.3d at 1134–35 ("Professor Angevine does not dispute Oklahoma State University owned the computer and the pornographic data he stored on it"). Having outlined the relevant facts, the Court finds that there are no material factual disputes. Further, for all the reasons set forth above, the Court finds that Plaintiff did not have a reasonable expectation of privacy, and therefore Defendant is entitled to judgment as a matter of law.

Finally, as discussed above, even if Plaintiff had created a fact issue as to whether his Fourth Amendment rights had been violated, Plaintiff has failed to establish a basis for holding Wood County liable for the alleged violation. Plaintiff argues that when the Wood County District Attorney's Office used Ms. Jordan's testimony regarding the contents of these files against Plaintiff, the County ratified her conduct. Response at 15. While Ms. Jordan's testimony was used at his criminal trial, it was only during the sentencing stage of the trial. This is not sufficient to show a

ratification of her actions by Wood County. *Turner*, 915 F.2d at 136 ("a municipality's final policymakers [may be] held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees"); *Bennett I*, 728 F.2d at 769 (a municipality may incur liability "by the acceptance of a course set or conducted by city employees," but such a course of conduct "whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability"); *Bolton*, 541 F.3d at 549 (noting that Fifth Circuit had previously rejected the contention that a policy or custom may be attributed to a municipality by attribution to all officers endowed with final or supervisory power or authority and noting that "[t]he finality of an official's action does not therefore automatically lend it the character of a policy"). Nor does it show that an unconstitutional policy existed. Further, Plaintiff has asserted no other facts in support of this contention. Therefore, Wood County cannot be held liable for this asserted violation of Plaintiff's Fourth Amendment rights. Because there are no genuine issues of material fact, Defendant is entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim as well.[6]

## CONCLUSION

The Court finds an absence of genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law on Plaintiff's claims under section 1983. For all the foregoing reasons, Defendant's Motion is **GRANTED**.

---

[6]Having found that summary judgment on Plaintiff's Fourth Amendment claim is appropriate, the Court here does not address Defendant's statute of limitations argument, as it was not raised until Defendant filed its Reply brief.

**So ORDERED and SIGNED this 30th day of June, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE